# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: | } |
| | } |
| ROBERT ANTONELLI | } CASE NO. 04-82986-JAC-7 |
| SSN: XXX-XX-5719 | } |
| JANA ADAMS ANTONELLI | } |
| SSN: XXX-XX-6650 | } |
|         Debtors | } CHAPTER 7 |
| | |
| KARL KNIGHT | } AP NO. 04-80171-JAC-7 |
|         Plaintiff(s), | } |
|   v. | } |
| ROBERT ANTONELLI | } |
| JANA ADAMS ANTONELLI | } |
|         Defendant(s). | } |

## MEMORANDUM OPINION

On October 8, 2004, the plaintiff, Karl Knight ("Knight"), filed a complaint to deny the debtors' discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5). On April 18, 2005, the Court held a hearing on the Knight's motion for summary judgment with William H. Hancock, Esq., appearing on behalf of plaintiff and G. John Dezenberg, Jr., Esq., appearing on behalf of the debtors. Prior to the hearing, the debtors filed a response to the motion for summary judgment and a counter motion for summary judgment. At the conclusion of the summary judgment hearing, the Court granted the parties time to submit supplemental briefs. Upon due consideration of the pleadings and respective submissions of the parties, the Court finds that there exists no genuine issue of material fact and grants summary judgment to Knight pursuant to § 727(a)(2).

## FACTS

Prior to filing bankruptcy, the debtors entered into a contract to purchase Knight's home. Subsequently, the debtors refused to purchase the home upon learning they could not have horses

on the property. In 2002, Knight filed suit against the debtors in the Circuit Court of Madison County, Alabama, CV-02-1823, for breach of contract. On February 24, 2003, a jury awarded Knight approximately $20,000.00 on his breach of contract claim. The debtors appealed the verdict, but the appeals process came to a close in April or May of 2004. On June 30, 2004, the debtors filed the above entitled bankruptcy petition after they lost the appeal.

In May of 2004, one month prior to filing bankruptcy, the debtors withdrew a combined total of $8,285.85 from their checking and savings accounts.[1] By affidavit, the debtors admit that they transferred or withdrew cash from their checking and savings accounts after the appeals processing ended to prevent Knight from garnishing their accounts. Debtors state:

> Mr. Knight, Plaintiff, obtained a judgment against us for our failure to honor a sales contract on his home and the appeals of that case came to a close in April or Mary 2004. When we realized that Mr. Knight was intending on garnishing our bank accounts to satisfy his judgment, we began to pay expenses in cash or money orders to minimize the chance that a lot of checks might bounce as a result of our account (sic) being garnished. This was done pursuant to advice we obtained from our civil litigation attorney, Mr. Larry House.[2]

The debtors defend the § 727(a)(2) count of Knight's complaint arguing that they "were forced to forego writing checks because of the threat of Karl Knight garnishing their account and causing checks to bounce when he executed on his judgment."[3] The debtors filed a list of their expenditures during May of 2004 accounting for $8,166.31 of the cash withdrawals during this time frame.

---

[1] Antonelli Aff.

[2] Antonelli Aff.

[3] Antonelli Resp. Mot. Summ. J. at 9.

Knight asserts numerous additional grounds to deny the debtors' discharge including allegations that: (1) the debtors submitted false invoices to support expenditures within sixty days prior to filing bankruptcy; (2) debtors under reported the value of their home using a tax appraisal despite having substantially higher appraisals available; (3) debtors falsely asserted in their petition that they held no interest in stock despite having $44,000.00 in a savings and retirement account; (4) debtors failed to disclose the sale and transfer of three horses and tack equipment within one year of filing bankruptcy; (5) debtors failed to disclose or provided false values of numerous items of personal property; and (6) debtors failed to explain the deficiency of the debtors' assets to meet their liabilities. The debtors deny certain allegations and attempt to explain others, but for purposes of this opinion the Court finds that debtors' discharge is due to be denied based on the undisputed facts surrounding the debtors withdrawal of more than $8,000.00 from their accounts with the stated purpose of preventing Knight from attaching same within one year before filing bankruptcy.

## DISCUSSION

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] Summary judgment is appropriate when the court determines that the moving party is entitled to judgment as a matter of law while viewing the evidence in a light most favorable to the non-moving party.[5] The party moving for summary judgment bears the burden of establishing the

---

[4] FED. R. CIV. PROC. 56(C).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

absence of a genuine issue of material fact.[6] Once the movant establishes a prima facie showing of entitlement to summary judgment as a matter of law, the non-movant must demonstrate that there is a genuine issue of material fact for trial.[7] Where both parties seek summary judgment, the Court must consider each motion independently and apply the applicable standards to each motion to determine whether summary judgment is appropriate under either motion.[8]

Examining the pleadings and evidentiary submissions in a light most favorable to the debtors, the Court finds that the debtors' Chapter 7 discharge is due to be denied pursuant to 11 U.S.C. § 727(a)(2)(A). Less than one year before filing bankruptcy the debtors transferred funds from their savings and checking accounts with the stated intention of preventing Knight from garnishing the accounts. Section 727(a)(2) of the Bankruptcy Code provides that the court shall grant the debtor a discharge, unless --

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

The focus under § 727(a)(2) is upon the intent of the debtor. Did the debtor make a transfer with the intent to hinder or delay a creditor? A creditor alleging intent to defraud under § 727(a)(2)(A) bears the burden of demonstrating actual fraudulent intent.[9]

---

[6] *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

[7] *Id.* at 324, 106 S.Ct. 2548.

[8] *In re Envirodyne Indus., Inc.*, 176 B.R. 825 (Bankr.N.D. Ill.1995).

[9] *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 307 (11th Cir. 1994); *Eastern Diversified Distrib, Inc. v. Matus (In re Matus),* 303 B.R. 660 (Bankr. N.D. Ga. 2004).

There is no requirement under § 727(a)(2)(A) that the debtor attempt to defraud, delay or hinder all creditors. All that is required is that the debtor act with intent to hinder or delay a single creditor.[10] In *First Leasing Co. v. McGalliard (In re McGalliard)*, 183 B.R. 726 (Bankr. M.D.N.C. 1995), the debtor made a prepetition payment to the IRS with funds from his retirement account. The debtor was aware that a judgment had been entered against him and that the creditor intended to attach the retirement account. The bankruptcy court denied the debtor's discharge pursuant to § 727(a)(2)(A) finding that the debtor handled his retirement account in a manner designed to avoid the attachment or seizure of the account. The debtor could not explain away his conduct by pointing out that he paid a legitimate creditor rather than transferring the money to a family member. The court stated that the requisite intent to delay or hinder may be found in the following circumstances:

> The requisite intent to delay or hinder a creditor may be found where a debtor deals with his assets in a manner designed and intended to avoid seizure or attachment by one or more of his creditors. For example, where a debtor reduces an asset to cash so that he can carry the money on his person to keep it in his home in order to prevent the money from being attached or garnished, his actions fall within the purview of § 727(a)(2) and he will be denied a discharge. . . . . The same is true of a debtor who had previously used his own checking account to pay his business expenses but started depositing his money into a joint account he had with his wife, and then started writing checks on that account after a judgment creditor had attached his personal account.[11]

In the case before the Court, the Atonellis have admitted repeatedly that they withdrew more than $8,000.00 from their accounts "during the time they were being threatened with a seizure of assets from the Plaintiff in this case."[12] In *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279 (9th

---

[10] *First Leasing Co. v. McGalliard (In re McGalliard)*, 183 B.R. 726, 732-33 (Bankr. M.D.N.C. 1995).

[11] *First Leasing Co. v. McGalliard (In re McGalliard)*, 183 B.R. 726, 734 (Bankr. M.D. N.C. 1995).

[12] Supplemental Resp. to Mot. for Summ. J. and Additional Grounds on Def's. Counter-Mot. for Summ. J., p. 5.

Cir. 1996), the court of appeals held that the debtors engaged in a fraudulent transfer warranting denial of discharge when they withdrew over $64,000.00 from accounts with admitted intent to hinder a judgment creditor's attempt to attach the accounts. In *Bernard,* the debtors withdrew over $64,000.00 from their money market accounts and deposit accounts after the creditors served the debtors with a notice that they were applying for a temporary protective order to prohibit the debtors from making any transfers other than in the ordinary course of the debtors' business. One month after the debtors withdrew the funds, the state court issued an order giving the creditors the right to attach the debtors' property. The debtors filed for Chapter 7 approximately seven months later and the judgment creditors objected to the debtors' discharge.

The debtors admitted that they withdrew the funds on advice of counsel to defeat the impending judgment. The bankruptcy court denied the debtors' discharge and stated that there was "no doubt that the Bernards made these transfers with intent to hinder, delay or defraud creditors within one year of the filing for bankruptcy."[13] On appeal the debtors argued that the withdrawals were not transfers for purposes of § 727(a)(2)(A), but the court of appeals rejected this argument finding that the debtors did not own the money in their bank accounts. Instead, the debtors owned claims against their bank so that when they withdrew the cash they parted with their claims against the bank with the admitted intent to hinder creditors. The creditors took legal action to help themselves collect on a debt owed by the debtors. The debtors intentionally and successfully hindered the creditors efforts by making withdrawals from accounts that were under threat of attachment. The debtors' fraudulent transfer warranted the denial of their discharge.

---

[13] *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996).

In this case, the debtors argue that they withdrew more than $8,000.00 after the appeal of Knight's judgment ended and the debtors realized that Knight intended to garnish their accounts. The debtors kept detailed records of how they used the cash funds to pay other expenses in lieu of Knight's judgment. They argue that they are entitled to judgment under § 727(a)(2)(A) because they are able to explain in detail how they utilized the funds to pay other legitimate debts. The intent to benefit some creditors is not, however, inconsistent with intent to hinder or delay under § 727(a)(2)(A).[14] In *Cadle Co. v. Marra (In re Marra)*, 308 B.R. 628 (D. Ct. 2004), the district court held that the mere fact that a Chapter 7 debtor's actions in establishing a separate bank account to prevent execution on funds needed to make mortgage payments on investment properties may have been intended to benefit some creditors did not preclude a finding that the debtor intended to hinder or delay another creditor. The district court remanded the case to the bankruptcy court for a determination of whether the debtor acted with the requisite intent.

In *In re Schafer*, 294 B.R. 126 (N.D. Cal. 2003), the district court held that an attempt to hinder any one creditor, even for the benefit of other creditors, warrants the denial of discharge under § 727(a)(2)(A). The debtor's actions, after a judgment creditor obtained a writ of attachment against his bank account, in opening a new account and placing funds in that new account in an attempt to prevent the creditor from gaining possession of the funds was in the nature of a "transfer" of funds which, having admittedly been made with intent to delay or frustrate the judgment creditor, warranted a denial of the debtor's bankruptcy discharge.

---

[14] *Cadle Co. v. Marra (In re Marra)*, 308 B.R. 628 (D. Ct. 2004); *In re Schafer,* 294 B.R. 126 (N.D. Cal. 2003).

In *Schafer,* the debtor defended the objection to discharge complaint arguing that he used the transferred funds to preserve his assets in order to make a pro rata distribution to all creditors. On summary judgment, the bankruptcy court addressed this argument stating:

> Perhaps the most persistent myth in insolvency law is that it is legitimate for a debtor to play cat-and-mouse games with a creditor so long as the debtor's overall intent is to pay his creditors as a whole. If § 727(a) referred to intent to hinder "creditors," then this sort of intent would indeed be a defense. However, a discharge is to be denied any debtor who has hindered "a creditor." Once property is concealed from a single creditor, the debtor has lost his discharge. It is no defense that he intended to use the concealed funds to pay other creditors or that his estate as a whole was not diminished.[15]

On appeal, the district court affirmed finding that a debtor who intends to prevent even one creditor from attaching funds is prohibited from discharging his debts through bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(A) regardless of whether the debtor's intention was to pay other creditors.

In this case, Knight took a judgment against the debtors for approximately $20,000.00 and successfully defended the judgment on appeal. When the debtors knew the appeal was over, they admittedly withdrew more than $8,000.00 from their accounts that were under threat of attachment and successfully prevented Knight from attaching the funds. That the debtors actions were taken with advice of counsel is no defense. The debtors' discharge is due to be denied pursuant to 11 U.S.C. § 727(a)(2)(A) based on their transfer of funds within one year before the date of the filing of the debtors' petition with the intent to hinder, delay or defraud a creditor.

A separate order will be entered consistent with this opinion.

Dated: May 10, 2005

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

---

[15] *In re Schafer*, 294 B.R. 126, 129 (N.D. Cal. 2003).

JAC/mhb
xc: Debtor(s)
William N. Hancock, attorney for plaintiff(s)
G. John Dezenberg, Jr., attorney for defendant(s)
Judith Thompson, trustee